IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## STATE OF TENNESSEE v. RONALD BENJAMIN IRWIN

**Appeal from the Criminal Court for Sullivan County**
**No. S47,373   Phyllis Miller, Judge**

_____

**No. E2004-01560-CCA-R3-CD - June 24, 2005**

_____

The appellant, Ronald Benjamin Irwin, was convicted by a jury of aggravated robbery. As a result, the appellant was sentenced as a Range I, standard offender to a nine-year sentence. On appeal, the appellant challenges the sufficiency of the evidence and his sentence as excessive. Because we determine that the evidence was sufficient to support the conviction and that the trial court did not err in sentencing the appellant to serve nine (9) years in incarceration, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

John D. Parker, Jr., Kingsport, Tennessee, for the Appellant, Ronald Benjamin Irwin.

Paul G. Summers, Attorney General & Reporter; Michelle Chapman McIntire, Assistant Attorney General; Greeley Wells, District Attorney General; Kent Chitwood, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On January 29, 2003, the Sullivan County Grand Jury indicted Shannon Bowlin, Kenneth Mullins and the appellant for the aggravated robbery of Cave's Drug Store in Kingsport, Tennessee.

On November 13, 2001, John Blessing, a detective with the Kingsport Police Department, received a call about a robbery at Cave's Drug Store. Detective Blessing responded to the call, spoke to witnesses and obtained a description of the suspects. According to pharmacy employees, at

approximately 2:30 p.m., two (2) men wearing full-face, black motorcycle helmets entered Cave's Drug Store, a pharmacy, and announced that they were conducting a robbery. The robbers were dressed in black, and they were wearing black gloves. The shorter of the two (2) was armed with a handgun. At some point during the robbery, the two (2) men raised the visors on their helmets. The shorter robber was a white male with distinctive blue eyes and a reddish-blonde mustache. The taller robber had on a green ski mask under his helmet.

The shorter robber demanded all of the Oxycontin and narcotics in the pharmacy from Jayne Justice, a pharmacy employee. Ms. Justice and three (3) other employees attempted to gather the drugs quickly, but the robber yelled at them, telling them they were not working fast enough. He threatened to shoot them. One of the employees grabbed a small green trash can and began placing the drugs inside.

The shorter robber instructed the taller robber to get behind the counter to assist the employees in placing the drugs in the trash can. Once the second robber had the trash can filled with drugs, the two (2) men began walking toward the door. Before they left, the shorter robber told the pharmacy employees not to come out of the store for ten (10) minutes. The robber also told them that he knew who they were and that he and his cohort would "kill [them] and [their] families" if they moved. The two (2) men exited the store and hopped on a black motorcycle. They sped down the road at a high rate of speed. As the men left Cave Drug Store, one of the employees called 911. The robbers took several bottles of narcotics, including Oxycontin, MS Contin, morphine sulfate and methotexate.

The following day, Detective Blessing received a call from a witness who saw a motorcycle traveling in an area near the pharmacy. Detective Blessing drove to the area where he met James Hicks, the appellant's neighbor. Mr. Hicks claimed that at approximately 2:30 p.m. on November 13, he heard the appellant ride his motorcycle into the neighborhood. Mr. Hicks later observed the appellant and two (2) other men in the appellant's garage. Based on Mr. Hick's observations, Detective Blessing went to the appellant's residence to speak with him about the robbery. Detective Blessing noticed that the appellant had bright blue eyes and a red mustache that matched the description of one of the robbers. At that point, Detective Blessing radioed for backup. As he waited for additional police personnel to arrive, Detective Blessing obtained the appellant's consent to search his residence. A search of the home uncovered a black motorcycle in the basement den area, a black leather jacket, and two (2) black, full-face helmets.

Detective David Cole responded to Detective Blessing's back-up call. When he arrived at the residence, Detective Blessing had already obtained the appellant's consent to search the residence. In addition to the motorcycle, jacket and helmets, Detective Cole discovered two (2) pairs of leather gloves and a second black leather jacket. The appellant initially claimed that he was at his sister's residence. In a later statement, the appellant claimed that he was at home during the robbery.

The appellant was tried before a jury for aggravated robbery in Sullivan County on December 17 and 18, 2003. At trial, Kenneth Mullins testified that he arrived at the appellant's house on

November 13, 2001, at approximately 10:00 a.m. and that they were "sick off Oxycontin" and "talkin' about robbin' Cave's drug store." At first, the appellant was not interested in participating in the robbery, but Mr. Mullins claims that he talked the appellant into it. The two (2) men went to the home of Shannon Bowlin, who also agreed to assist in the robbery. From there, the three (3) men returned to the appellant's home, where they planned the robbery.

Mr. Mullins testified that the three (3) men left the appellant's residence and headed to the pharmacy. At the time, Mr. Bowlin, who had the gun, was driving the motorcycle. Mr. Mullins and the appellant followed Mr. Bowlin in Mr. Mullins's white Chevrolet Impala. The appellant was wearing a black leather jacket, and both Mr. Bowlin and the appellant were wearing leather gloves and motorcycle helmets. When they arrived at the pharmacy, Mr. Bowlin parked his motorcycle near the front door and left it running. Mr. Mullins dropped the appellant off near the front door of the pharmacy and parked his car nearby.

Mr. Mullins watched the two (2) men enter the pharmacy. Approximately two (2) or three (3) minutes later, Mr. Mullins saw the two (2) men exit the pharmacy and get on the motorcycle. At that time, the appellant was carrying a trash can. Mr. Mullins followed the motorcycle to the appellant's house. Mr. Mullins testified that the motorcycle was traveling at approximately eighty (80) or ninety (90) miles per hour.

When they arrived at the appellant's residence, Mr. Mullins saw the medication that the appellant and Mr. Bowlin took from the pharmacy. Shortly thereafter, the men agreed that they should go to another location because of the possibility that they may have been followed by the police. The three (3) men got into Mr. Mullins's Impala and went to Mr. Bowlin's home. On the way, they all consumed some Oxycontin pills. Once they arrived at Mr. Bowlin's house, the three (3) men divided up the remaining pills from the robbery.

Once they split up the pills, Mr. Mullins and the appellant left Mr. Bowlin's house. Mr. Mullins dropped the appellant off at his sister's house. Mr. Mullins then went home. Mr. Mullins saw the appellant again the day after the robbery, when the appellant informed him that the police had already questioned him about the robbery. Mr. Mullins described the appellant as approximately five (5) feet, ten (10) inches tall and Mr. Bowlin as six (6) feet, five (5) inches tall.

Jayne Justice, an employee of Cave Drug Store, testified in detail at trial about the robbery. She explained that she was in fear for her life during the entire encounter and was able to describe both of the robbers, specifically noting that the shorter of the two (2) men had bright blue eyes and a reddish-blonde mustache.

Gary Lane testified that he was driving in the Kingsport area on November 13, 2001, when he observed a black motorcycle traveling at a high rate of speed. He saw two (2) men on the motorcycle wearing black leather jackets and black helmets. He called the police later that day after he learned of the robbery at Cave's Drug Store and heard the description of the suspects.

Timothy Urbaine, the appellant's nephew, testified that the appellant admitted to him that he robbed a pharmacy with Mr. Mullins and Mr. Bowlin. Mr. Urbaine claimed that the appellant told him about the robbery in the latter part of 2001 or the early part of 2002. The appellant told Mr. Urbaine that he drove his motorcycle, wore a helmet and used a gun during the robbery.

The appellant's sister, Faith Gibson, testified for the defense as a alibi witness. Ms. Gibson stated that she picked up the appellant at his residence at approximately 1:00 p.m. on the day of the robbery and took him back to her home. According to Ms. Gibson, the appellant remained at her home until about 2:30 a.m. the next morning. Ms. Gibson claimed that the appellant was suffering from withdrawals. Ms. Gibson admitted that her brother had a drug problem but testified that, at the time of the robbery, he was trying to quit using drugs and was extremely sick.

Patricia Stimper, the appellant's mother, testified that she was at Ms. Gibson's residence on November 13, 2001, and that the appellant was there also. Mrs. Stimper claimed that she arrived at Ms. Gibson's residence between 1:15 p.m. and 1:30 p.m. and that when she left the residence at 3:15 p.m., the appellant was still there.

At the conclusion of the evidence, the jury found the appellant guilty of aggravated robbery and recommended a $25,000 fine. At a later sentencing hearing, the trial court sentenced the appellant as a Range I standard offender to serve nine (9) years in the Department of Correction for the offense and approved the fine as recommended by the jury. The appellant filed a motion for new trial in which he challenged the sufficiency of the evidence. After the trial court denied the motion for new trial, the appellant filed a timely notice of appeal. On appeal, the appellant argues that the evidence was not sufficient to support the verdict and that the trial court erred in sentencing him to a nine-year sentence.[1]

## Sufficiency of the Evidence

The appellant complains on appeal that the evidence produced at trial was insufficient to sustain the jury's verdict, the jury's verdict was contrary to the law and the evidence produced at trial preponderates against the appellant's guilt and in favor of his innocence. The State counters that the evidence was "certainly sufficient to sustain the defendant's conviction for aggravated robbery."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked

---

[1]In his statement of the issues, the appellant also presents as issues "whether the trial court erred in denying his motion for a directed verdict of acquittal" and whether the "trial court erred in denying the appellant's motion for alternative sentence under the community corrections act." However, the appellant does not address these issues in his argument section. Accordingly, these issues are waived. See Tenn. R. App. P. 13 (b).

with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant was convicted of aggravated robbery. Pursuant to Tennessee Code Annotated section 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402.

The evidence produced at trial established that on November 13, 2001, the appellant, along with Mr. Bowlin and Mr. Mullins, planned to rob Cave's Drug Store. In accordance with that plan, the three (3) men went to the pharmacy. Mr. Bowlin and the appellant entered the pharmacy dressed in full-face helmets and told the employees that they wanted all of the Oxycontin and narcotics. The appellant brandished a gun. The two (2) men left the pharmacy after threatening the employees and securing a small trash can full of drugs. Ms. Justice was able to describe the appellant's bright blue eyes, reddish-blond mustache, approximate height and approximate weight. There was no dispute that the drugs were the property of Cave's Drug. Similarly, there is no dispute that the handgun used during the robbery was a deadly weapon and that the employees inside the pharmacy at the time of the robbery were in fear. The proof indicated that Mr. Mullins was receiving some benefit in his pending federal cases in exchange for his testimony. He testified that as a result of his testimony, the federal authorities had agreed to seek a sentence that would run concurrently with the state sentences he had already received. The appellant called several alibi witnesses and attempted to challenge the credibility of several of the State's witnesses, but the jury, as evidenced by its verdict, assessed the credibility of the witnesses and found the evidence sufficient to convict the appellant of aggravated robbery. Again, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. Pruett, 788 S.W.2d at 561. Viewed in the light most favorable to the State, we determine that the evidence was sufficient to convict the appellant of aggravated robbery. This issue is without merit.

<u>Sentencing</u>

The appellant raises several challenges to his sentence. Initially, the appellant contends that the trial court erred by sentencing him to nine (9) year's confinement because the trial court failed to properly weigh the mitigating and enhancement factors. Specifically, the appellant argues that the trial court improperly applied enhancement factors (2),(3),(4), and (11), and that the record does not "affirmatively show proper consideration of all relevant circumstances." The appellant also argues that the holding in <u>Blakely v. Washington</u>, 524 U.S. ___, 124 S.Ct. 2531 (2004), requires the trial court to give him the presumptive minimum sentence. The State disagrees.

The Tennessee Supreme Court recently determined that <u>Blakely</u> did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." <u>State v Edwin Gomez</u>, ___ S.W.3d ___ , No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *17 n.16 (Tenn. Apr. 15, 2005). In <u>Gomez</u>, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S.Ct. 2531 (2004), <u>United States v. Booker</u>, ___ U.S. ___, 125 S.Ct. 738 (2005), or <u>United States v. FanFan</u>, the case consolidated with <u>Booker</u>, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." <u>Edwin Gomez</u>, ___ S.W.3d at ___, 2005 WL 856848, at *27. Thus, in order to determine a defendant's sentence, a trial court starts at the presumptive sentence, enhances the sentence within the range for existing enhancement factors, and then reduces the sentence within the range for existing mitigating factors in accordance with Tennessee Code Annotated section 40-35-210(e). No particular weight for each factor is prescribed by the statute; the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code and as long as its findings are supported by the record. <u>See</u> <u>State v. Santiago</u>, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995).

"When reviewing sentencing issues . . . , the appellate court shall conduct a <u>de novo</u> review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b);

-6-

Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In the case herein, the appellant was convicted of aggravated robbery, a Class B felony. Tenn. Code Ann. § 39-13-402(b). The appellant is a Range I, standard offender, so the range of punishment is eight (8) to twelve (12) years. Tenn. Code Ann. 40-35-112(a)(2). Unless there are enhancement factors present, the presumptive sentence to be imposed is the minimum in the range for a Class B felony. Tenn. Code Ann. § 40-35- 210(c).

The trial court sentenced the appellant to nine (9) years based on the application of the following enhancement factors: (1) the appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tennessee Code Annotated section 40-35-114(2); (2) the defendant was the leader in the commission of an offense involving two (2) or more criminal actors, Tennessee Code Annotated section 40-35-114(3); (3) the offense involved more than one (1) victim, Tennessee Code Annotated section 40-35-114(4); and (4) the defendant had no hesitation about committing a crime when the risk to human life was high, Tennessee Code Annotated section 40-35-114(11). The trial court stated:

> Number two, you have a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range. The criminal convictions are set out on pages 7 and 8 of the presentence report, and of course the State introduced a certified copy or an exemplified copy of two of those convictions, and then your criminal behavior is illegal drug use set out on page 10, drinking beginning at age thirteen, drinking alcoholic beverages. Then illegal drug use including marijuana, cocaine, Lortab, Oxycontin. So have to give number two great weight.
>
> Number three applies, you were a leader in the commission of an offense involving two or more criminal actors. Now, the testimony was that it wasn't necessarily your idea at first you didn't want to do it, but when you decided to do it you became the main person in it, in a way, you know. The one that held the gun, the one that threatened to . . . .
>
> . . . .
>
> Now, there were actually two people who testified that, where the court could find that you were a leader in the commission of an offense involving two or more criminal actors.
>
> . . . .
>
> Four, the offense involved more than one victim, yes. The aggravated robbery did. There were at least two employees in there and I'm trying to, I can't

remember if there were customers, but at least the two employees. You're charged with one aggravated robbery, but you threatened both of them, held the gun on both of them. So I find that applies to the aggravated robbery.

> . . . .

> Eleven, you did have no hesitation about committing a crime when the risk to human life was high. It was a shopping center area, people parked outside. It was in the daytime, there were customers around. You know, of course an aggravated robbery in itself is, involves a risk to human life, but you know, the fact that you were armed and going into the place with the other people around there and in the parking lot, I find that that [sic] applies.

As a result of the application of enhancement factors (2), (3), (4) and (11), the trial court enhanced the sentence from eight (8) years to ten (10) years. However, the trial court reduced the sentence to nine (9) years based on the appellant's solid work history.

Turning to the evidence at the sentencing hearing and at trial, we conclude that the trial court did not err in enhancing the appellant's sentence from eight (8) years to nine (9) years. The presentence report revealed that, in addition to several possession of illegal drug charges stemming from the circumstances herein, the appellant also had at least ten (10) other convictions on his record. The appellant's criminal history is sufficient to support the application of enhancement factor (2). Additionally, the testimony at trial indicated that the appellant was the leader in the commission of the offense because he shouted orders at the employees of the pharmacy and brandished the gun during the robbery. In order to apply this enhancement factor, the proof need not even show that the appellant was "the leader" only that the appellant was "a leader." See State v. Freeman, 925 S.W.2d 35, 30-31 (Tenn. Crim. App. 1996). The evidence does not preponderate against the application of enhancement factor (3). Further, it is proper to find the application of enhancement factor (4) where there is more than one victim and the defendant is not convicted of separate offenses for each victim. See State v. Reid, 91 S.W.3d 247, 310-11 (Tenn. 2002). The proof indicated that there were at least three (3) employees at the pharmacy who were held at gun point and threatened during the robbery. The application of this enhancement factor was proper. Finally, the evidence indicates that the application of enhancement factor (11) was proper. The appellant and his cohorts robbed a pharmacy that was located in a shopping center at gun point in the middle of the day and sped away at a high rate of speed on a motorcycle. After a review of the record, we conclude that the trial court properly sentenced the appellant to nine (9) years for his conviction for aggravated robbery. This issue has no merit.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE